IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| TIMOTHY EDWARD MacMILLAN, | CV 18-30-BU-JCL |
| Plaintiff, | |
| vs. | ORDER |
| UNITED PARCEL SERVICE, INC., and JOHN DOES 1-5, | |
| Defendants. | |

Defendant United Parcel Service, Inc. ("UPS") moves to dismiss Plaintiff Timothy Edward MacMillan's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, UPS's motion is granted.

I. **Background**[1]

Plaintiff began working for UPS in 2006 as a feeder driver at its Butte, Montana center. In late April 2014, UPS suspended Plaintiff without written warning pending an investigation. On April 30, 2014, UPS terminated Plaintiff's

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint (doc. 1-1) and the Collective Bargaining Agreement (doc. 19-1), which is integral to the Complaint and forms the basis of Plaintiff's claims.

employment because he had been taking personal time to make stops at a local casino for a soda during work hours. UPS advised Plaintiff in its termination letter that it considered his on-the-clock stops for food and drink to be "an act of proven dishonesty" and discharged him on that basis. (Doc. 1-1, at ¶ 24).

Plaintiff's employment was subject to a collective bargaining agreement ("CBA") negotiated between UPS and Plaintiff's union, the Teamsters Union Local No. 2 ("Union"). UPS recognizes the Union as the exclusive representative of all employees covered by the CBA. (Doc. 19-1, at 11). Article 28, Section 2 of the CBA establishes a grievance procedure for cases pertaining to a discharge or suspension from employment. (Doc. 19-1, at 114-115). This section of the CBA provides, in part, that all panel filings regarding a discharge or suspension "shall be referred immediately to the UPS Labor-Management Committee for determination in accordance with the grievance procedure." (Doc. 19-1, at 114). In those cases where the UPS Labor-Management Committee "reaches a deadlock, either party may submit the matter to an impartial arbitrator for final decision." (Doc. 19-1, at 115).

Following his discharge, Plaintiff, through his Union, filed a grievance and requested reinstatement to his position. The parties have stipulated that Plaintiff's grievance "was heard and denied by the joint UPS/Union grievance panel in May 2014." (Doc. 9, at 3). Nearly three years later, in April 2017, Plaintiff commenced

this action against UPS. Plaintiff takes the position that the CBA did not provide for or require arbitration under the circumstances, and alleges he exhausted the CBA's grievance procedures prior to filing suit.

Plaintiff filed his Complaint in state court, asserting state law claims against UPS for breach of contract, tortious violation of the covenant of good faith and fair dealing, and negligent infliction of emotional distress. Plaintiff's breach of contract claim alleges that UPS breached Article 28, Section 2 of the CBA by failing to provide him with a written warning notice prior to his termination. Plaintiff further claims that in breaching its contractual duties, UPS tortiously violated the covenant of good faith and fair dealing. Finally, Plaintiff's negligent infliction of emotional distress claim alleges that as a result of UPS's actions, he has suffered and continues to embarrassment, humiliation, and other forms of emotional distress. The Complaint expressly makes clear that "Plaintiff is not suing his Union for any breach of duty, but is only suing [UPS] based upon its violation of the terms of the contract grievance procedures in the CBA." (Doc. 1-1, at ¶ 23).

UPS removed the case to this Court based on federal question jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 to 197. UPS has since moved to dismiss the Complaint under Rule 12(b)(6) on the ground that Plaintiff's claims derive exclusively from the CBA and are thus preempted by Section 301. Alternatively, UPS argues Plaintiff's claims are

preempted by the Montana Wrongful Discharge from Employment Act ("WDEA"), Mont. Code Ann. §§ 39-2-901 et seq.

**II.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). Plaintiff must state a claim for relief that is "plausible on its face" to survive a motion to dismiss. *Zixiang Li*, 710 F.3d at 999 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the Court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted).

However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citing *Halkin v. VeriFone, Inc.* 11. F.3d 865, 868 (9th Cir. 1993)). Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions

- 4 -

cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.2d 752, 754–55 (9th Cir. 1994). Finally, dismissal without leave to amend is appropriate when it is "clear that the complaint cannot be saved by further amendment." *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

### III. Discussion

Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 thus "provides a statutory mechanism for vindicating contract rights under a collective bargaining agreement." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 511 (9th Cir. 1978). "The preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). Section 301 "preempts state law claims that are based directly on rights created by a collective bargaining agreement as well as claims that are substantially dependent on an interpretation of a collective bargaining agreement." *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1211 (9th Cir. 1999). See also *Allis-Chalmers v. Lueck*, 471 U.S. 202, 220 (1985) (preemption appropriate where resolution of a state claim is "inextricably intertwined with" or "substantially

dependent upon" analysis of the terms of a CBA). The purpose of Section 301 preemption is to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).

The Ninth Circuit applies a two-step analysis to determine whether a state law claim is preempted by Section 301. *Kobold v. Good Samaritan Regional Medical Center*, 832 F.3d 1024, 1032 (9th Cir. 2016). First, the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Kobold*, 832 F.3d at 1032. "If the right exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there." *Kobold*, 832 F.3d at 1032 (citation omitted). But if the court determines that the right underlying the state law claim "exists independently of the CBA," the court moves to the second step and considers "whether the right is nevertheless substantially dependent on analysis" of the CBA. *Kobold*, 826 F.3d at 1032-33 (internal quotation marks and citation omitted).

Applying these standards here, Plaintiff's breach of contract claim is clearly preempted. Plaintiff alleges that UPS breached the terms of the CBA by terminating his employment without "providing the requisite written warning notice." (Doc. 1-1, ¶ 24). The Complaint makes clear that Plaintiff's breach of

contract claim is based solely on UPS's alleged "violation of the terms of the contract grievance procedures in the CBA." (Doc. 1-1, at ¶ 23). Because the contractual rights upon which Plaintiff's breach of contract claim is premised exist solely as a result of the CBA, the claim is preempted under Section 301.

Plaintiff's claim for breach of the covenant of good faith and fair dealing is similarly preempted. Plaintiff alleges that in breaching its contractual duties under the CBA, UPS tortiously violated the covenant of good faith and fair dealing. Specifically, Plaintiff claims he was "in an unequal bargaining position when [UPS] breached its contractual duties to him and forced him out of his job" and alleges that UPS "had superior knowledge about the contractual legal requirements with respect to terminating an employee and not following contractual clauses." (Doc. 101, ¶ 29). Plaintiff further alleges that he "did not have the expertise to recognize that [UPS] could not terminate [him] without applying the CBA terms." (Doc. 1-1, ¶ 33). As these allegations reflect, Plaintiff's claim is inextricably intertwined with the terms of the CBA and depends substantially on whether UPS complied with the provisions of the CBA in terminating Plaintiff's employment. Because it places in issue the terms of the CBA, Plaintiff's claim for breach of the covenant of good faith and fair dealing is preempted under Section 301. See *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 1987) (claim for breach of the

implied covenant of good faith and fair dealing preempted where it places "in issue the terms of the collective bargaining agreement").

Plaintiff's claim for negligent infliction of emotional distress arises out of the same conduct which forms the basis of his breach of contract claim. As set forth throughout the Complaint, Plaintiff's theory of the case is that UPS breached its contractual obligations under the CBA by failing to give him a written warning notice and in doing so violated the covenant of good faith and fair dealing and caused him emotional distress. Plaintiff's emotional distress claim thus arises out of Plaintiff's discharge and is inextricably intertwined with analysis of the terms of the CBA, which means that it too is preempted under Section 301. See *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1149-50 (9th Cir. 1988) (emotional distress claim that arises out of discharge and cannot be resolved without analyzing the terms of the CBA is preempted under Section 301).

Notably, Plaintiff does not present any argument to the contrary. Instead of addressing whether the three claims expressly identified in the Complaint are preempted, Plaintiff argues that he also pled a claim for violation of his rights under the United States and Montana Constitutions. In the text of his claim for breach of the covenant of good faith and fair dealing, Plaintiff alleges he did not know that UPS's conduct was "a violation of Constitutional Rights and property interest in the job…and the Fourteenth Amendment to the US Constitution." (Doc.

101, ¶ 29). This single statement, which appears within Plaintiff's claim for breach of the covenant of the good faith and fair dealing, is not sufficient to assert a constitutional tort claim. Even if it was, Plaintiff does not point to any authority establishing a constitutional tort remedy against a private entity like UPS. See e.g. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-22 (1961) (the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful); *State v. Long*, 700 P.2d 153, 177 (Mont. 1985) (noting "well-established constitutional principles" that violation of the Montana Constitution requires state action). To the extent Plaintiff is claiming a property interest in his job at UPS under *Gilbert v. Homar*, 520 U.S. 924 (1997), that case is inapposite because it involved due process constitutional violations by a state actor.

For the reasons set forth above, the Court concludes that Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress are preempted under Section 301 and provided a basis for removal.[2] The inquiry does not end here, however. Plaintiff's Complaint can survive dismissal only if he has stated a plausible claim for relief under Section 301.

---

[2] Because Plaintiff's claims are preempted by the LMRA, the Court need not address UPS's alternative argument that they are also preempted by the Montana WDEA.

UPS argues Plaintiff has not stated a claim for relief under Section 301 because it is clear based on the allegations in the Complaint and the terms of the CBA that Plaintiff has not exhausted his contractual remedies. In general, a plaintiff must exhaust any grievance or arbitration remedies in the CBA as prerequisite to suit. *Kobold*, 832 F.3d at 1036-37; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007). UPS contends that under the terms of CBA, the grievance procedure in suspension and discharge cases necessarily ends with binding arbitration. Because Plaintiff does not claim to have pursued his grievance to arbitration (doc. 1-1, ¶ 26), UPS argues he has not exhausted his administrative remedies.

As UPS recognizes, however, there is an exception to the exhaustion requirement where a plaintiff alleges the union breached its duty of fair representation. See *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983). Plaintiff makes clear in his Complaint that he "is not suing his Union for any breach of duty, but is only suing [UPS] based upon its violation of the terms of the contract grievance procedures in the CBA." (Doc. 101, ¶ 23). Absent any allegations against the Union, UPS maintains Plaintiff was required to exhaust the CBA's grievances procedures and the fact that he did not do so means that his Complaint must be dismissed for failure to state a claim.

While the Court agrees that Plaintiff fails to state a claim for relief, it does so for different reasons.  UPS's argument that Plaintiff failed to exhaust his administrative remedies by not proceeding to arbitration is based on a misreading CBA's grievance procedure.  The grievance procedure applicable in suspension and discharge cases is set forth in Article 28, Section 2 of the CBA, which provides that "[a]ll panel filing shall be referred immediately to the UPS Labor-Management Committee for determination in accordance with the grievance procedure" and "[i]f the Committee reaches a deadlock, either party may submit the matter to an impartial arbitrator for final decision." (Doc. 19-1, at 114-115). The CBA thus provides for arbitration in cases pertaining to suspension or discharge only where the Committee deadlocks.

Here, the parties have stipulated that "Plaintiff filed a grievance with the Union, which was heard and denied by the joint UPS/Union grievance panel in May 2014." (Doc. 9, ¶ 11).  Whether this "grievance panel" is the UPS Labor-Management Committee mentioned in the CBA is not entirely clear.  Assuming it is, then arbitration was not required because the Committee denied Plaintiff's grievance, instead of deadlocking. Even if the "grievance panel" is something different, the result is the same. Plaintiff alleges in the Complaint that he exhausted the grievance procedure, and there are no materials before the Court showing otherwise. Taking the allegations in the Complaint as true, and considering the

terms of the CBA and stipulated facts, the Court assumes for present purposes that Plaintiff exhausted his contractual remedies under the CBA.

But even assuming Plaintiff fully exhausted the CBA's grievance procedure, he fails to state a claim under Section 301 because he does not allege that the Union breached its duty of fair representation during the grievance process. When a "CBA provides exclusive grievance and arbitration procedures, an employee is required to exhaust those procedures and is bound by the results of that process." *Love v. Permanente Medical Group*, 2013 WL 6731463, *5 (N.D. Cal. Dec. 19, 2013) (citing *DelCostello*, 463 U.S. at 163-64). Ordinarily "no judicial remedy lies – the grievance procedure under the CBA is the sole remedy." *Love*, 2013 WL 6731463, *5 (quoting *Grotz v. Kaiser Found. Hospitals,* 2012 WL 5350254, *5 (N.D. Cal. Oct. 29, 2012).

Thus, even if an employee has exhausted the CBA's grievance procedure, he "must allege and prove the union breached its duty of fair representation" in order "to bring an individual suit directly against the employer for breach of the CBA." *Waldron v. Boeing*, 388 F.3d 591, 594 (8th Cir. 2004). See also *Johnson v. United States Postal Service*, 756 F.2d 1461, 1467 (9th Cir. 1985) (concluding that "a cause of action for breach of a collective bargaining agreement may not be maintained if the union provided fair representation.").

Often referred to as a "hybrid" lawsuit, the employee in such a case must show both that "the union breached its duty of fair representation and the employer breached the CBA in order to prevail against the employer." *Waldron*, 388 F.3d at 594 (an employee bringing a Section 301 claim against his employer must prove not only that his discharge violated the CBA but also that the union breached its duty of fair representation, regardless of whether the employee exhausted the grievance procedures). See also *Love*, 2013 WL 6731463, *5 (dismissing Section 301 claim by employee who had exhausted her administrative remedies because she did not allege that the union breached its duty of fair representation in handling her grievances or that it otherwise acted improperly); *Frost v. Harper*, 2001 WL 34063534, **3-4 (Nov. 23, 2001 S.D. Texas) (same). Thus, even assuming Plaintiff fully exhausted his contractual remedies under the CBA, he fails to state a Section 301 claim against UPS because he does not allege that the Union breached its duty of fair representation during the grievance process.

For the reasons discussed above, UPS's Rule 12(b)(6) motion to dismiss is well taken. UPS asks the Court to dismiss Plaintiff's Complaint with prejudice. Ordinarily, dismissal for failure to state a claim should be without prejudice and leave to amend the complaint should be granted unless amendment would be futile. See e.g. *Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1107-08 (9th Cir. 2003). Plaintiff does not seek leave to amend, however, and the deadline for amending the

pleadings in this case passed several months ago. (Doc. 13, at 1). Moreover, allowing Plaintiff to amend the Complaint at this late date would be futile.

It is well established that a six-month statute of limitations applies to claims under Section 301. *DelCostello*, 462 U.S. at 169-170. Plaintiff was discharged in April 2014, but he did not Plaintiff did not file this action until May 2017 – nearly three years later. Plaintiff has not alleged any facts that would support tolling the six-month statute of limitations and makes no argument to that effect in response to UPS's motion. Therefore, Plaintiff's Section 301 claim is time barred and his Complaint is properly dismissed with prejudice.

## IV. Conclusion

For the reasons set forth above,

IT IS ORDERED that the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED and this case is DISMISSED with prejudice.

DATED this 19th day of April, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge